FILED
United States Court of Appeals
Tenth Circuit

December 18, 2017

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

STEPHEN D. BAGLEY,

     Defendant-Appellant.

No. 16-3305

_____

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 2:14-CR-20103-CM-1)**
_____

Clinton W. Lee, Lansing, Kansas, for Defendant-Appellant.

James A. Brown, Assistant United States Attorney (Thomas E. Beall, United States Attorney, with him on the briefs), District of Kansas, Topeka, Kansas, for Plaintiff-Appellee.
_____

Before **BACHARACH**, **McKAY,** and **MURPHY**, Circuit Judges.
_____

**BACHARACH**, Circuit Judge.
_____

This appeal involves a protective sweep of a house incident to the arrest of one of its occupants, Mr. Stephen Bagley. Our precedents limit protective sweeps to the area immediately adjacent to the place of arrest in the absence of specific, articulable information that a dangerous person

remains in the house. In this case, law enforcement officials conducted a protective sweep of the entire house without any information suggesting that someone else remained inside.

The protective sweep yielded items that allowed law enforcement officials to obtain a search warrant for the entire house. Executing this warrant, officials found incriminating evidence. Mr. Bagley moved to suppress the evidence, arguing that the protective sweep had gone too far. The district court denied the motion. We reverse because the protective sweep was not permissible under the Fourth Amendment.

## I. Law enforcement officials conducted a protective sweep.

Mr. Bagley is a convicted felon who was named in an arrest warrant for violating the terms of his supervised release. To execute this arrest warrant, Deputy U.S. Marshals obtained a search warrant allowing entry into a house solely to locate and arrest Mr. Bagley. Deputy marshals came to the house to execute the warrant. When they arrived, Mr. Bagley was allegedly in the southeast bedroom. He eventually surrendered and was handcuffed near the front door.

The deputy marshals then conducted a protective sweep of the entire house. In the southeast bedroom, deputy marshals found two rounds of ammunition and a substance appearing to be marijuana. These finds led the deputy marshals to obtain a second search warrant. Unlike the first search warrant, the second warrant permitted officers to search the entire house

for firearms, ammunition, and controlled substances. Executing the second warrant, deputy marshals found a gun.[1] Mr. Bagley unsuccessfully moved to suppress evidence of the gun.

## II.   The protective sweep went beyond constitutional limits under our precedents.

To address the ruling on the motion to suppress, we start with the first search warrant. This warrant permitted the officers to search only for Mr. Bagley and to arrest him. Once he surrendered, the officers would ordinarily have lacked any authority to continue searching. *See Maryland v. Buie*, 494 U.S. 325, 333 (1990). But the government invokes the exception for protective sweeps. *See Fishbein v. City of Glenwood Springs*, 469 F.3d 957, 961 (10th Cir. 2006) (stating that "[t]he protective-sweep doctrine" provides "an exception to the Fourth Amendment's warrant requirement").

Invoking this exception, the government argues that when the deputy marshals arrested Mr. Bagley, they were permitted to conduct a protective sweep. "A protective sweep is not a full search, but rather a quick, cursory inspection of the premises, permitted when police officers reasonably believe, based on specific and articulable facts, that the area to be swept harbors an individual posing danger to those on the arrest scene." *United*

---

[1]     They also found a digital scale, more suspected marijuana, and more ammunition.

*States v. Soria*, 959 F.2d 855, 857 (10th Cir. 1992). Even if a protective sweep were permissible, however, the deputy marshals went beyond the limits imposed by our precedents.

**A.    *Maryland v. Buie* identifies two situations for a protective sweep.**

The seminal precedent is *Maryland v. Buie*, 494 U.S. 325 (1990). There the Supreme Court allowed protective sweeps in two situations. In the first situation, authorities can look in "closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." 494 U.S. at 334. In the second situation, authorities can look elsewhere in the house upon specific, articulable facts supporting a reasonable belief that someone dangerous remains in the house. *Id.*

**B.    Our review is de novo.**

In determining whether a protective sweep complies with the Fourth Amendment, we engage in de novo review. *United States v. Smith*, 131 F.3d 1392, 1396 (10th Cir. 1997).

**C.    The protective sweep went beyond either situation identified in *Buie*.**

The district court held that the protective sweep fit the second situation. The government defends this holding but argues that the protective sweep also fit the first situation. The district court and the government are incorrect.

4

### 1. The record does not support affirmance based on *Buie*'s first situation.

The government argues for the first time that the protective sweep fell within the first situation discussed in *Buie*. *Buie*'s first situation allowed the deputy marshals to look in "closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Maryland v. Buie*, 494 U.S. 325, 334 (1990). Though the government did not raise this argument in district court, we can affirm on alternative grounds when the district court record is adequately developed. *United States v. Nelson*, 868 F.3d 885, 891 (10th Cir. 2017).

The record provides some relevant information but leaves sizeable gaps pertinent to *Buie*'s first situation. We know that the ammunition and suspected marijuana were found in the southeast bedroom and that Mr. Bagley was near the front door when he was handcuffed. And by the time the deputy marshals started the protective sweep, Mr. Bagley had already been handcuffed. Appellant's App'x at 80. But we cannot discern from the record whether Mr. Bagley was inside or outside the house when the protective sweep began. If he was outside the house, *Buie*'s first situation would probably not allow a protective sweep in the southeast bedroom. *See United States v. White*, 748 F.3d 507, 510 (3d Cir. 2014) (stating that a protective sweep cannot be justified under *Buie*'s first situation when the arrest occurs outside the house).

5

But Mr. Bagley may have been in the living room when the protective sweep began. If he was, there would have been a wall and hallway between Mr. Bagley and the southeast bedroom. *See United States v. Archibald*, 589 F.3d 289, 293, 298 (6th Cir. 2009) (holding that for purposes of a protective sweep, the kitchen did not adjoin the living room when the two were separated by a solid bar counter obscuring the view between the two rooms). From the record, we cannot discern the length of the hallway or the distance between Mr. Bagley and the southeast bedroom. Thus, we lack enough information in the record to characterize the southeast bedroom and Mr. Bagley's location as "adjacent." *See United States v. Burrows*, 48 F.3d 1011, 1016 (7th Cir. 1995) (noting that the *Buie* inquiry is "very fact-specific" and that one of the guiding considerations is the house's "particular configuration").

In light of the deficiencies in the district court record, we cannot affirm the district court's ruling based on the government's newly asserted reliance on *Buie*'s first situation. *See United States v. Nelson*, 868 F.3d 885, 891 (10th Cir. 2017) (declining to affirm the suppression of evidence, based on *Buie*'s first situation, because the district court had "made no findings regarding the proximity of the location of [the defendant's] arrest to the area that [the law enforcement officer] ultimately searched").

The government argues that it doesn't matter where Mr. Bagley was at the time of the protective sweep because he had earlier been "arrested"

6

in the southeast bedroom. With this focus on the place of the purported earlier arrest, the government argues that the deputy marshals could enter the southeast bedroom because Mr. Bagley had announced his surrender when he was in the southeast bedroom, rendering him under "arrest" at that time. Based on the alleged location of the arrest as the southeast bedroom, the government argues that the deputy marshals could later enter that room to conduct a protective sweep based on *Buie*'s first situation. We disagree.

The meaning of "arrest" can vary based on context. For example, when applying the Fourth Amendment to an arrest in a public area, we consider an "arrest" to take place when the individual submits to authority. *See California v. Hodari D.*, 499 U.S. 621, 626-27 (1991). But in applying the Speedy Trial Act, some courts consider an "arrest" to take place when the individual has been formally charged with a crime. *E.g.*, *United States v. Sayers*, 698 F.2d 1128, 1131 (11th Cir. 1983). What about the context of *Buie*'s first situation, when pinpointing the timing of the arrest bears only on whether the searched area adjoins the place of the arrest?

In this context, we consider the purpose of the protective sweep. Under *Buie*, the officers can conduct a cursory inspection of the area adjoining the place of arrest to prevent a danger to those at the scene. *See United States v. Maddox*, 388 F.3d 1356, 1363 (10th Cir. 2004) ("[W]e conclude that it is proper to consider the reasonable threats posed to the officers when drawing the boundaries of the arrest scene in an individual

7

case."). Here, a prudent officer would have been conducting the protective sweep when Mr. Bagley was already handcuffed.

Rather than allege a potential danger, the government defends inspection of the southeast bedroom on the ground that the arrest had taken place there. For this argument, the government reasons that Mr. Bagley submitted to authorities when he announced from the southeast bedroom that he would surrender. But at that point, Mr. Bagley was unrestrained, free to renege on his promise to surrender. That freedom ended only when he was handcuffed near the front door. Therefore, in the context of *Buie*'s first situation, the place of arrest was near the front door rather than in the southeast bedroom.

But let's assume for the sake of argument that Mr. Bagley was technically under arrest while still in the southeast bedroom (when he told the officers that he would come out and surrender). According to the government, the protective sweep could encompass the southeast bedroom because Mr. Bagley had been arrested there. But he was not handcuffed until after he had left the bedroom.

The deputy marshals could conduct a protective sweep only if the protective sweep was justified at the time of the arrest; the deputy marshals could not conduct the arrest and later conduct a protective sweep based on an earlier arrest somewhere in the house. *See Vale v. Louisiana*, 399 U.S. 30, 33 (1970) ("A search may be incident to an arrest 'only if it is

substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest.'" (quoting *Shipley v. California*, 395 U.S. 818, 819 (1969))). In these circumstances, we conclude that the protective sweep did not fall within the first situation identified in *Buie*.

## 2. The protective sweep did not fit *Buie's* second situation.

The district court concluded that the protective sweep fit *Buie*'s second situation. We disagree.

In the second situation for a protective sweep, officers can search beyond adjacent areas upon "'specific and articulable facts'" supporting an objective belief that someone dangerous remains in the house. *Maryland v. Buie*, 494 U.S. 325, 332-34 (1990) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). The government concedes that its reliance on *Buie*'s second situation is no longer tenable under *United States v. Nelson*, 868 F.3d 885 (10th Cir. 2017). We agree.

When the deputy marshals entered the southeast bedroom, Mr. Bagley, his girlfriend, and her children had already left the house. The deputy marshals had no way of knowing, one way or another, whether anyone besides Mr. Bagley was still in the house. This uncertainty, according to the government, would have concerned the officers because they might have been subjected to an attack if someone else had remained inside.

9

We recently rejected an identical argument in *Nelson*. There too the government relied on the officers' inability to know whether someone else was inside. 868 F.3d at 889. But we held that lack of knowledge cannot constitute the specific, articulable facts required by *Buie*. *Id*. For this holding, we reasoned that if officers lack any information about whether someone remains inside a house, they do not have the specific, articulable facts required for a protective sweep beyond the adjacent areas. *Id*.; *see also United States v. Carter*, 360 F.3d 1235, 1242-43 (10th Cir. 2004) (stating that a protective sweep cannot be based on the possibility that a dangerous person could be concealed without specific, articulable facts that someone was concealed). This lack of specific, articulable facts required invalidation of the search in *Nelson*, and the same is true here.

## III. The improper protective sweep indirectly led to discovery of the gun, requiring suppression.

The protective sweep provided only an indirect connection to evidence of the gun. When the officers conducted the protective sweep, they found only ammunition and a substance appearing to be marijuana. Relying solely on the discovery of these items, one of the deputy marshals (Deputy Matt Cahill) obtained a search warrant. Executing that warrant, the deputy marshals found the gun.

Ordinarily, the Fourth Amendment would require the district court to exclude the gun from evidence because its discovery resulted indirectly

10

from the improper protective sweep. *See Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963). But an exception exists, which we call the "good-faith exception." *See United States v. Leon*, 468 U.S. 897, 922-23 (1984). Under this exception, evidence is not suppressed when officers act in good faith, reasonably relying on a mistake by a third party, usually a neutral, detached judge who issues a warrant. *Id*. But the good-faith exception does not apply when officers rely on their own prior conduct. *See United States v. Herrera*, 444 F.3d 1238, 1249 (10th Cir. 2006) (stating that the good-faith exception ordinarily applies only when an officer reasonably relies on a mistake made by someone else).

The district court did not address the applicability of this exception; as a result, we address the exception in the first instance. Doing so, we conclude that the exception does not apply because the second search warrant was based solely on what the deputy marshals had found in the improper protective sweep. Presumably for this reason, the government does not suggest that the deputy marshals relied on a judge's mistake. *See United States v. Nelson*, 868 F.3d 885, 892 (10th Cir. 2017) (holding that the good-faith exception did not apply because the officers were relying only on what they had found in their own improper protective sweep).

Deputy Cahill obtained the second search warrant by telling the judge that the deputy marshals had found ammunition and suspected marijuana in a protective sweep. Nothing was said about where Mr. Bagley

11

was at the time of arrest or where the ammunition and suspected marijuana had been found. As a result, the deputy marshals admittedly did not rely on the imprimatur of the warrant. They relied on information known only to themselves about the scope of the protective sweep and the underlying factual circumstances. The deputy marshals' reliance on their own conduct prevents us from applying the good-faith exception. *See United States v. Herrera*, 444 F.3d 1238, 1249-52 (10th Cir. 2006) (stating that the good-faith exception applies only "where someone other than a police officer has made the mistaken determination that resulted in the Fourth Amendment violation").

Finally, the government argues that the good-faith exception applies when the officers' conduct is "close" to the line of validity. We rejected an identical argument in *United States v. Nelson*, 868 F.3d 885, 892 (10th Cir. 2017). There the lack of reliance on a third party prevented application of the good-faith exception even if the officers' conduct had been "close" to the line of validity. 868 F.3d at 892.

The same is true here: The good-faith exception requires reliance on a third party's mistake; in the absence of such reliance, the district court must suppress the unlawfully obtained evidence when its introduction would be unconstitutional even if the issue is "close."

## IV.    Conclusion

The district court erred in denying Mr. Bagley's motion to suppress because the deputy marshals exceeded *Buie*'s two situations for a protective sweep. Because the protective sweep was improper, the deputy marshals could not use the ammunition or suspected marijuana to justify the second search warrant. Executing the second search warrant, the deputy marshals found a gun, which should have been suppressed in district court. Thus, we reverse and remand with instructions to grant Mr. Bagley's motion to suppress evidence of the gun.