BACHARACH, Circuit Judge.
This appeal stems from a search, which took place after the police spoke with the defendant, Mr. Desmond Gaines. After a brief exchange, Mr. Gaines fled but was soon captured. The police then found cocaine, marijuana, PCP, drug paraphernalia, over $640, and a handgun. Mr. Gaines unsuccessfully moved to suppress this evidence. He now appeals,[1] and we focus on two issues:
1. The existence of a seizure . Two uniformed police officers approached Mr. Gaines with flashing roof lights and confronted him about a report that he was selling PCP. Did this confrontation entail a seizure? The answer turns on whether a reasonable person would have felt free to leave or terminate the encounter. We answer "no" and characterize the encounter as a seizure.
2. The attenuation of a possible Fourth Amendment violation . After effecting a seizure, the police allegedly acquired probable cause and learned of an outstanding arrest warrant. Did the development of probable cause or the subsequent discovery of the arrest warrant attenuate the connection between the seizure and the evidence? We answer "no," so introduction of the evidence can't be supported by attenuation of a Fourth Amendment violation.
Given our conclusions on these two issues, we vacate the denial of Mr. Gaines's motion to suppress.
I. The Kansas City police approach Mr. Gaines in marked police cars and question him about a report that he is selling PCP.
One morning, the police in Kansas City, Kansas, received a 911 call reporting that a man dressed in red had just sold drugs in a parking lot. Based on this information, police officers Carl Rowland and Shenee Davis responded.
The police officers pulled into the parking lot in two separate police cars and turned on their roof lights.[2] They parked *796 behind a car in which a man in red clothing (Mr. Gaines) was seated. Officer Rowland gestured for Mr. Gaines to get out of the car. He did, and Officer Rowland confronted Mr. Gaines with the report that he was selling drugs. The police officers soon observed an open container of alcohol and smelled PCP. When they said they were going to detain Mr. Gaines, he grabbed a pouch from his car and fled. The police caught Mr. Gaines and discovered the evidence that underlies this appeal.
II. Was there a seizure?
The threshold issue is applicability of the Fourth Amendment. This amendment applies if the police had seized Mr. Gaines; it doesn't if the encounter had been consensual. United States v. Reeves , 524 F.3d 1161, 1166 (10th Cir. 2008). The district court characterized the entire encounter as consensual. To determine whether the encounter was consensual or constituted a seizure, we apply a dual standard of review, using the clear-error standard for the district court's findings of historical fact and de novo review for the court's legal conclusions. United States v. Roberson , 864 F.3d 1118, 1121 (10th Cir. 2017).[3]
The existence of a seizure involves a matter of law. See United States v. Salazar , 609 F.3d 1059, 1064 (10th Cir. 2010) (stating that determining "when the seizure occurred ... is a legal [question]"). On this matter of law, we consider whether Mr. Gaines yielded to a police officer's show of authority. California v. Hodari D. , 499 U.S. 621, 626-27, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). To answer this question of law, we apply an objective test, considering whether a reasonable person would have felt free to leave or terminate the encounter. Florida v. Bostick , 501 U.S. 429, 436, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). We apply this objective test to the historical facts, which are largely undisputed. Even if a reasonable person would not have felt free to leave, a seizure would occur only if the suspect yielded to a police officer's show of authority. Hodari D. , 499 U.S. at 626-27, 111 S.Ct. 1547.
So let's consider how a reasonable person would have felt, facing the same circumstances that Mr. Gaines confronted. The encounter began with Mr. Gaines sitting in his car in a parking lot. Two uniformed police officers arrived in marked police cars, both flashing their roof lights. Would a reasonable person have felt free to leave? Perhaps. But the flashing roof lights,[4] two marked police cars, and two uniformed officers[5] would undoubtedly *797 have cast at least some doubt on a reasonable person's belief in his or her freedom to leave.
This doubt would likely have intensified in Kansas (where Mr. Gaines was stopped) because of Kansas's traffic laws. See Berkemer v. McCarty , 468 U.S. 420, 436-37, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (considering the laws of most states, which criminalize the failure to heed a police officer's signal to stop, as informative on whether the defendant reasonably believed that he wasn't free to leave). Under Kansas law, motorists must stop whenever a police officer flashes his or her emergency lights. Kan. Stat. Ann. § 8-1568(a)(1), (d).
The district court minimized the impact of the flashing roof lights, crediting testimony by the police officers that they had activated their lights only because their cars were blocking a lane of traffic. But the officers' subjective intent had little bearing on whether a reasonable person would have thought that he or she could leave. See Brendlin v. California , 551 U.S. 249, 260-61, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007) ("The intent that counts under the Fourth Amendment" is the intent conveyed to the suspect, and the court does not consider the officers' "subjective intent when determining who is seized."); see also United States v. Mendenhall , 446 U.S. 544, 554 n.6, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (concluding that a law-enforcement agent's "subjective intention ... to detain the respondent, had she attempted to leave, is irrelevant except insofar as that may have been conveyed to the respondent").
But let's assume that a reasonable person would have felt free to drive away at this point.[6] One of the police officers then exited his car and gestured for Mr. Gaines to get out of the car. Here is what our reasonable person would have seen:
At a minimum, the police officer's gesture would have cast further doubt on a reasonable *798 person's belief that he or she was free to drive away. See Santos v. Frederick Cty. Bd. of Comm'rs , 725 F.3d 451, 462 (4th Cir. 2013) (holding that two deputy sheriffs' gestures to stay seated constituted a seizure).
But let's assume that a reasonable person would still have felt free to leave. As Mr. Gaines exited the car, one police officer stood just a few feet away and said that they had come because of a report that Mr. Gaines was "up here selling some dope." The police officer then asked Mr. Gaines whether he had been selling "wet" (street-language for PCP). Meanwhile, another uniformed police officer circled the car, looking inside.[7]
Would a reasonable person have felt free to leave? At a minimum, the accusatory question would have added to the reasonable person's doubt about his or her freedom to return to the car and drive away. See United States v. Glass , 128 F.3d 1398, 1407 (10th Cir. 1997) (stating that "particularized focus" on an individual "is certainly a factor" to consider when determining whether a seizure took place).[8]
These were the five circumstances that confronted Mr. Gaines:
1. He was sitting in his car when two marked police cars approached and stopped right behind him with their roof lights flashing.
2. Both police officers were uniformed.
3. One police officer gestured for Mr. Gaines to get out of his car.
4. Mr. Gaines exited his car, and one of the police officers said that they had *799 come based on a report that he was selling PCP in the parking lot.
5. While one police officer told Mr. Gaines that someone had accused him of selling PCP, the other police officer circled Mr. Gaines's car and looked inside.
Viewing these circumstances as a whole, we conclude that (1) the police officers showed their authority and (2) no reasonable person would have felt free to leave.
Still, the encounter would constitute a seizure only if Mr. Gaines had yielded to the show of authority. He ultimately fled, so the government denies that Mr. Gaines yielded. We disagree. One officer gestured for Mr. Gaines to get out of his car, and he did. When Mr. Gaines was asked questions, he responded. See United States v. Camacho , 661 F.3d 718, 726 (1st Cir. 2011) (stating that a suspect "submitted" to a police officer's "show of authority by responding to his questions"). And when Mr. Gaines was asked for his identification, he opened his car trunk to look for his identification.
Mr. Gaines then fled. But by that point, he had already yielded to the show of authority. We addressed a similar issue in United States v. Morgan , 936 F.2d 1561 (10th Cir. 1991). There the defendant exited his car and fled after asking the officer: "What do you want?" Morgan , 936 F.2d at 1566. We considered this single question enough to conclude that the defendant had yielded to authority. Id. at 1567. By comparison, Mr. Gaines had done more to yield: getting out of his car, answering the officer's questions, and looking for his identification.
We thus conclude that Mr. Gaines was seized.
III. Even if the seizure itself had been improper, would the attenuation doctrine permit introduction of the subsequently discovered evidence?
The government argues that even if the seizure had been improper, it would have had only an attenuated connection to the later discovery of evidence. This argument is based on the attenuation doctrine. Under this doctrine, a constitutional violation leading to the discovery of evidence does not require exclusion when only an attenuated connection exists between the constitutional violation and discovery of the evidence. Utah v. Strieff , --- U.S. ----, 136 S.Ct. 2056, 2061, 195 L.Ed.2d 400 (2016).
*800 To invoke the attenuation doctrine, the government bears a "heavy burden." United States v. Fox , 600 F.3d 1253, 1259 (10th Cir. 2010). Trying to satisfy this burden, the government alleges two attenuating circumstances:
1. An outstanding arrest warrant existed for Mr. Gaines prior to the encounter.
2. The police officers obtained probable cause to search the car based on the smell of PCP and observation of an open container of alcohol.
The district court found attenuation based on the outstanding arrest warrant. The court didn't address probable cause, but the government points to probable cause as an alternative basis to affirm the finding of attenuation. In our view, attenuation cannot be based on either the arrest warrant or the eventual development of probable cause.
A. Arrest Warrant
When the police officers searched the car, they did not know of any outstanding arrest warrants. But shortly after conducting the search and arresting Mr. Gaines, the police learned that he had an outstanding arrest warrant. Based on the discovery of the warrant, the district court found that the attenuation doctrine would allow introduction of the evidence even if the initial encounter had constituted an unlawful seizure. We disagree because (1) the execution of the arrest warrant might not have allowed a search of the car and (2) two of the attenuation doctrine's three factors support exclusion.
We again apply a dual standard of review, using the clear-error standard for findings of historical fact and de novo review for legal conclusions. Ornelas v. United States , 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).
The arrest warrant might have led to an arrest, and arresting Mr. Gaines would have allowed the police to conduct a search incident to an arrest. Chimel v. California , 395 U.S. 752, 762-63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). For a search incident to an arrest, the police could search Mr. Gaines's person and places within his immediate control at the time of the search. See United States v. Edwards , 632 F.3d 633, 643 (10th Cir. 2001) ; see also United States v. Knapp , No. 18-8031, 2019 WL 1030173, 917 F.3d 1161, 1168 (10th Cir. Mar. 5, 2019) (to be published) ("We therefore join the Third Circuit in interpreting Gant as focusing attention on the arrestee's ability to access weapons or destroy evidence at the time of the search, rather than the time of the arrest, regardless of whether the search involved a vehicle.").
Here, the evidence at issue was in Mr. Gaines's car. If the police had arrested Mr. Gaines based on the arrest warrant, he might or might not have been within reach of the car at the time of the search. If Mr. Gaines was not within reach, the police could not have searched the car incident to the arrest. See Arizona v. Gant , 556 U.S. 332, 343, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009) (stating that the police can "search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search").
At oral argument, the government theorized for the first time that the police could have impounded the car and conducted an inventory search. Though the district court didn't consider these theories, we can ordinarily consider alternative arguments to affirm if the record is adequately developed. United States v. Bagley , 877 F.3d 1151, 1154 (10th Cir. 2017). Here, however, the government did not present this contention until oral argument. We typically decline to consider an *801 appellee's contentions raised for the first time in oral argument. See Adamscheck v. Am. Family Mut. Ins. Co. , 818 F.3d 576, 588 (10th Cir. 2016) (rejecting an appellee's contention to affirm on an alternative ground because the contention was raised for the first time at oral argument).
Even if we were to consider the government's new contention, however, we would reject it. To conduct an inventory search, the government had to prove that the police could lawfully impound Mr. Gaines's car. See United States v. Sanders , 796 F.3d 1241, 1244 (10th Cir. 2015) ("The government bears the burden of proving that its impoundment of a vehicle satisfies the fourth Amendment."). To satisfy this burden, the government had to show that the police had standardized criteria justifying impoundment and a legitimate community-caretaking reason to impound the car. Id. at 1248.
Here the government presented no evidence of standardized criteria for impoundment. Even with such evidence, however, the police could impound the car only upon proof of a community-caretaking rationale. For example, impoundment might have been permissible if the car had obstructed traffic or imperiled public safety. South Dakota v. Opperman , 428 U.S. 364, 368-69, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). But we lack any evidence that the car was illegally parked or imperiling public safety.[9]
But let's generously assume that the police could have searched the car based on (1) discovery of the arrest warrant or (2) impoundment of the car. Even with this assumption, we could apply the attenuation doctrine only after considering three factors:
1. the "temporal proximity" between the Fourth Amendment violation and discovery of the evidence
2. the presence of "intervening circumstances"
3. the "purpose and flagrancy" of the officer's wrongdoing
Brown v. Illinois , 422 U.S. 590, 603-04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). The first two factors favor suppression of the evidence; only the third arguably favors the government.
The first factor (temporal proximity) supports Mr. Gaines because the evidence was discovered only minutes after the seizure. See Utah v. Strieff , --- U.S. ----, 136 S.Ct. 2056, 2062, 195 L.Ed.2d 400 (2016).
The third factor (the purpose and flagrancy of the police wrongdoing) supports the government. The police officers arguably should have known that the encounter constituted a seizure. But the district court found that the police had been negligent (at worst). This finding was reasonable because the issue of reasonable suspicion is close. (We discuss this issue below.) So if the search had been unlawful, the police would have been (at worst) negligent.
We also consider the second factor (the presence of intervening circumstances between the allegedly unlawful stop and discovery of the evidence). This factor supports Mr. Gaines because the arrest warrant wasn't discovered until after the search. See United States v. Gaines , 668 F.3d 170, 175 (4th Cir. 2012) (concluding that when evidence is discovered prior to the defendant's independent criminal act, this criminal act cannot serve as "an intervening event" to purge the taint of an unlawful police action);
*802 United States v. Beauchamp , 659 F.3d 560, 574 (6th Cir. 2011) (concluding that no intervening circumstances existed because the new ground for the search had arisen after discovery of the evidence); United States v. Camacho , 661 F.3d 718, 730-31 (1st Cir. 2011) (same).
The government contends that if Mr. Gaines had not fled, the police
• would have learned of the arrest warrant before searching the car and
• might have impounded the car.
For the sake of argument, we can assume that the government is right. But the attenuation doctrine addresses events as they actually occurred, not as they might have transpired. Thus, the arrest warrant and potential impoundment do not attenuate the connection between a possible Fourth Amendment violation and discovery of the evidence.
B. Probable Cause
The government also insists that the development of probable cause would have triggered the attenuation doctrine. We reject this argument.
According to the government, the police officers obtained probable cause when they smelled PCP and observed an open container of alcohol in Mr. Gaines's car. But even if probable cause existed, it would have flowed directly from the seizure. See Wong Sun v. United States , 371 U.S. 471, 487-88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). So the discovery of evidence would still be traced directly to the possible Fourth Amendment violation. See id . Given this direct causal connection, the eventual development of probable cause would not trigger the attenuation doctrine.[10]
IV. Was the police's suspicion reasonable?
Even though Mr. Gaines was seized, the seizure would have been permissible if the police had a reasonable ground to suspect Mr. Gaines of a crime. See United States v. Cortez , 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). The district court didn't address the reasonableness of the police's suspicion. So our threshold decision is whether to decide this issue or remand for the district court to address this issue in the first instance.
Mr. Gaines asks us to remand for the district court to decide the issue in the first instance. We grant this request. The inquiry on reasonable suspicion ordinarily entails a fact-intensive inquiry better suited to the district court than to our court. See United States v. Esquivel-Rios , 725 F.3d 1231, 1238 (10th Cir. 2013) (Gorsuch, J.) (discussing the benefit of remanding so that the district court could decide reasonable suspicion in the first instance); United States v. Hauk , 412 F.3d 1179, 1186 (10th Cir. 2005) (referring to reasonable suspicion as a "fact-intensive" issue). And here, the parties disagree on some potentially material aspects of the inquiry, such as
• whether the 911 caller implied that he or she had observed a drug sale and
• whether either police officer had known of past drug sales in the area where Mr. Gaines was located.
*803 The issue is also close. The police learned of Mr. Gaines through an anonymous tip, and the Supreme Court concluded in Florida v. J.L. , 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) that an anonymous tip hadn't supplied reasonable suspicion. J.L. , 529 U.S. at 271, 120 S.Ct. 1375. But the Supreme Court also reached the opposite conclusion in Navarette v. California , 572 U.S. 393, 134 S.Ct. 1683, 188 L.Ed.2d 680 (2014). There the Court relied partly on the use of the 911 system, the contemporaneous nature of the call with the reported crime, and the specificity of the information. Navarette , 572 U.S. at 398-403, 134 S.Ct. 1683. These factors arguably apply here. But in J.L. , the Court also suggested the importance of predictive information and corroboration, and both are arguably missing here. J.L. , 529 U.S. at 270-71, 120 S.Ct. 1375.
Given the closeness of the issue and the district court's superior resources for fact-finding, we grant Mr. Gaines's request to remand for the district court to decide whether the police had reasonable suspicion.
V. Did Mr. Gaines abandon the black pouch?
When Mr. Gaines fled, he threw a black pouch onto the roof of a building. The police later found the pouch, and it contained illegal drugs, cash, and drug paraphernalia. All of this evidence was introduced at the trial. Mr. Gaines alleges that the evidence should have been excluded, and the government contends that Mr. Gaines abandoned the pouch.
The district court didn't address the issue, and the record on abandonment is inadequately developed. We therefore can't consider abandonment as an alternative ground for affirmance. See p. 800, above.[11]
VI. Conclusion
The police effected a seizure when two uniformed police officers pulled behind Mr. Gaines in marked police cars, using their roof lights and pointedly telling Mr. Gaines that they had come because of a report that he was selling drugs in the parking lot. After conducting the search, the police learned of an outstanding warrant and arguably obtained probable cause during their discussion with Mr. Gaines. But neither the arrest warrant nor the later existence of probable cause attenuate the causal connection between the seizure and discovery of the evidence. We thus vacate the denial of Mr. Gaines's motion to suppress.
An issue remains on the existence of reasonable suspicion. This issue is better suited for the district court to decide in the first instance. We thus remand for consideration of the issue involving reasonable suspicion.[12]

After a trial, Mr. Gaines was convicted of (1) possessing cocaine base, PCP, and marijuana with intent to distribute, (2) possessing a firearm in furtherance of a drug-trafficking crime, and (3) possessing a firearm after a felony conviction. But the appeal involves only the ruling on Mr. Gaines's motion to suppress.

In videos of the stop, it is hard to tell whether Officer Davis's roof lights were on. But Officer Davis testified in the suppression hearing that she had activated her roof lights.

When considering whether the district court clearly erred, we have often said that we view the evidence in the light most favorable to the district court's ruling or to the prevailing party. See United States v. Salazar , 609 F.3d 1059, 1063 (10th Cir. 2010) (favorable to the prevailing party); United States v. Valenzuela , 365 F.3d 892, 896 (10th Cir. 2004) (favorable to the district court's determination). Mr. Gaines challenges these statements, urging us to jettison our existing approach. But one panel of this court can't overrule another panel. United States v. Doe , 865 F.3d 1295, 1298 (10th Cir. 2017). So we continue to view the evidence in the light most favorable to the district court's ruling or to the prevailing party. E.g. , United States v. Cone , 868 F.3d 1150, 1152 (10th Cir. 2017).

See 4 Wayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 9.4(a), at 598-99 (5th ed. 2012) (stating that the "use of flashing lights as a show of authority ... will likely convert the event into a Fourth Amendment seizure").

See United States v. Williams , 615 F.3d 657, 660 (6th Cir. 2010) ("Williams was seized: a reasonable person would not have felt free to leave upon being approached by two uniformed officers in a marked car, singled out of a group, and immediately accused of a crime."); see also United States v. Lopez , 443 F.3d 1280, 1284 (10th Cir. 2006) (stating that the presence of uniformed officers bears on whether a police encounter constitutes a seizure).

If the police officers had followed and reactivated their roof lights, Kansas law would have required the person to pull over. See Kan. Stat. Ann. § 8-1568(a)(1), (d) ; State v. Morris , 276 Kan. 11, 72 P.3d 570, 577 (2003).

At a hearing, a prosecutor told the district court that the police officers had "encircle[d] the location" because the situation was "heightened." R., vol. I at 372.

We have sometimes cautioned that the mere existence of incriminating questions is not relevant to the existence of a seizure. See United States v. Little , 18 F.3d 1499, 1506 (10th Cir. 1994) (en banc); United States v. Ringold , 335 F.3d 1168, 1173 (10th Cir. 2003). We do not question these cautionary statements. But here the police officer didn't just ask incriminating questions; he began by explaining that he had come (with roof lights flashing) because of a report that this person was selling drugs in the parking lot. See United States v. Smith , 794 F.3d 681, 686 (7th Cir. 2015) ("The line between a consensual conversation and a seizure is crossed when police convey to an individual that he or she is suspected of a crime.").

After arresting Mr. Gaines, the police didn't impound the car. Instead, the police gave the keys to Mr. Gaines's acquaintance, who delivered the car to Mr. Gaines's mother.

This argument might succeed in other cases when a suspect commits a new crime during an unlawful seizure. For example, if a suspect resists arrest during the seizure, the new crime of resisting arrest might arguably attenuate the link between the seizure and a subsequent search. See United States v. Bailey , 691 F.2d 1009, 1018 (11th Cir. 1982) (attenuation when the defendant resisted arrest during an unlawful stop because resisting arrest constituted a "new, distinct crime"). We need not address this issue because the government doesn't allege the commission of a new, distinct crime after the search.

Mr. Gaines argues that the government waived its abandonment argument by failing to raise it in district court. For this argument, Mr. Gaines relies on United States v. Hernandez , 847 F.3d 1257, 1262 (10th Cir. 2017), and United States v. Verner , 659 F. App'x 461, 466-68 (10th Cir. 2016) (unpublished). In these cases, however, the government was the appellant. Hernandez , 847 F.3d at 1260 ; Verner , 659 F. App'x at 462. And we ordinarily allow the government to present new arguments for affirmance when the district court record is adequately developed. See p. 800, above (citing United States v. Bagley , 877 F.3d 1151, 1154 (10th Cir. 2017) ).

On remand, the district court is also free to consider the government's argument involving abandonment of the black pouch. The issue of abandonment is fact-intensive and better suited for the district court to decide on a fuller record. See, e.g. , United States v. Driskill , No. 98-6331, 1999 WL 730954, at *2 (10th Cir. Sept. 20, 1999) (unpublished) ("Whether a defendant 'abandoned' property in the Fourth Amendment sense is a fact-intensive determination which would ordinarily require an adequately developed record.").