**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JAROD BEACH BROOK,

    Defendant - Appellant.

No. 19-6116
(D.C. No. 5:18-CR-00246-R-2)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**
_____

Before **HARTZ**, **MURPHY**, and **MATHESON**, Circuit Judges.
_____

Jarod Beach Brook pled guilty to being a felon in possession of ammunition in

violation of 18 U.S.C. § 922(g)(1). He pled conditionally so he could appeal the

denial of his motion to suppress evidence that the police obtained from a U-Haul

pickup truck he had rented. In his motion, he argued the officers had violated his

Fourth Amendment rights. Exercising jurisdiction under 28 U.S.C. § 1291, we

affirm.

## I. **BACKGROUND**

### A. *Factual Background*

The following facts are taken from the suppression hearing, *see* ROA, Vol. 2 at

11-13, and from the police reports that were made part of the record, *see* ROA, Vol. 1

at 55-75.[1]  Because the district court denied Mr. Brook's suppression motion, these facts "are presented in the light most favorable to the Government."  *See United States v. Roberson*, 864 F.3d 1118, 1119 (10th Cir. 2017).

1. **Burglary**

On May 15, 2018, a homeowner reported the theft of a gun safe containing "[eight] firearms, ammunition, jewelry, [and] . . . cash."  ROA, Vol. 1 at 57; *see* ROA, Vol. 2 at 11.  He told Oklahoma City Police Department ("OCPD") Detective Jason Saxon that he believed Jack Chambers, a former house guest, had stolen the safe.  ROA, Vol. 1 at 57; *see* ROA, Vol. 2 at 11.

Six days later, police apprehended Mr. Chambers.  ROA, Vol. 1 at 58; *see* ROA, Vol. 2 at 11.  He told Detective Saxon and Oklahoma County District Attorney's Office Investigator Mike Sharp that he committed the burglary with Mr. Brook.  ROA, Vol. 1 at 58, 61.  He said the stolen guns were located at Aaron Collins's house.  *Id.* at 61.  Detective Saxon served Mr. Collins with a search warrant, searched his home, and found two guns.  *Id.* at 59.

---

[1] At the beginning of the suppression hearing, the district judge stated the facts of the case.  *See* ROA, Vol. 2 at 11-13.  Attorneys representing the Government and Mr. Brook agreed with his recitation of the facts.  *See id.* at 13 ("[GOVERNMENT]: Your Honor, you fairly stated the facts. . . . [DEFENSE]:  I think your recitation of the facts are accurate, Your Honor.").  Neither witness testimony nor other evidence was presented in the hearing.  *See id.* at 11-25.

Mr. Collins told Detective Saxon that Mr. Chambers and Mr. Brook had come to his home to sell guns taken from the stolen safe. ROA, Vol. 1 at 59. He further told the detective that he had seen Mr. Brook with three guns, *id.*; *see* ROA, Vol. 2 at 11, and that Mr. Brook "[wa]s a transient and ha[d] no vehicle," ROA, Vol. 1 at 60; *see* ROA, Vol. 2 at 15.[2] Mr. Collins's girlfriend, Jessica Pelfrey, said she had seen Mr. Brook with a gun. ROA, Vol. 1 at 60.

## 2. Surveillance and Arrest

OCPD Detective Chris Grimes and Investigator Sharp learned Mr. Brook had been driving a U-Haul pickup truck, *id.* at 70, and visiting an apartment building, *id.* at 65; *see* ROA, Vol. 2 at 12. With an arrest warrant for Mr. Brook, ROA, Vol. 1 at 62, they surveilled the building on May 23, *id.* at 65; *see* ROA, Vol. 2 at 12. They spotted a U-Haul pickup truck pulling into the parking lot with Mr. Brook as a passenger. ROA, Vol. 1 at 65; *see* ROA, Vol. 2 at 12. An unknown woman was driving. Detective Grimes and Investigator Sharp called for backup from the "OCPD Gang Unit to assist . . . in taking [Mr. Brook] into custody for his outstanding warrant." ROA, Vol. 1 at 65; *see* ROA, Vol. 2 at 12.

---

[2] Mr. Chambers and Mr. Collins offered different accounts of how many guns Mr. Brook had taken from the stolen safe. Mr. Chambers told Detective Saxon that Mr. Brook took five guns from the safe. *See* ROA, Vol. 1 at 61. Mr. Collins said Mr. Brook took three guns but later changed his description of which guns Mr. Brook had taken. *See id.* at 59-60. Despite these variances, Mr. Chambers and Mr. Collins said Mr. Brook participated in the burglary and had taken at least three stolen guns from the safe.

When backup arrived, the police surrounded the residence and inspected the then unoccupied U-Haul. ROA, Vol. 1 at 65-66. A tenant informed them that Mr. Brook "was upstairs in an apartment located on the east side." ROA, Vol. 1 at 66. Officers began clearing the building. *Id.* The building manager provided Detective Grimes with a master key. *Id.* The manager said he did not know Mr. Brook and "did[] [not] want the U[-]Haul [t]ruck on his property." *Id.* at 72; *see* ROA, Vol. 2 at 12.

While sweeping the building, officers "found [Mr. Br]ook attempting to jump out of the window from the bathroom onto the roof of the second story." ROA, Vol. 1 at 66. He struggled with police, refused to come down from the roof, but "eventually gave up." *Id.* The officers arrested him.

### 3. U-Haul Pickup Truck Search

After arresting Mr. Brook, Detective Grimes tried to find the U-Haul driver. When he learned she had left and "couldn't be found," officers inventoried the truck. *Id.* at 66-67; *see* ROA, Vol. 2 at 12-13. They recovered "[a] Sig Sauer pistol box," "a box of . . . ammunition," "two empty pistol magazines," and "two Sig pistol magazines"—one loaded and the other empty. ROA, Vol. 1 at 67. Detective Grimes noted "[t]hese items were believed to be possibly taken in the burglary." *Id.* He also found a U-Haul rental agreement in the truck's glove compartment. *Id.* It listed Mr. Brook as the renter. *Id.* Police impounded the U-Haul.

4

## B. *Procedural History*

A federal grand jury indicted Mr. Brook as a felon in possession of (1) a firearm and (2) ammunition, both in violation of 18 U.S.C. § 922(g)(1).  He moved to suppress the evidence seized from the U-Haul, arguing the search and impound violated his Fourth Amendment rights.  The Government opposed the motion, contending the U-Haul was properly searched and impounded.

After holding a suppression hearing, the district court denied Mr. Brook's suppression motion from the bench.  It found that "an objective officer would have probable cause to search [the U-Haul] under the automobile exception."  ROA, Vol. 2 at 23-24.  "[I]t would be reasonable to think that there would be fruits of that theft to be found in th[e] vehicle."  *Id.* at 24.

The district court listed several facts as contributing to the officers' probable cause, including that police (1) "had an arrest warrant for the defendant for stealing property;" (2) "had information that he had in his possession, at least seven days prior to that, two pistols and a shotgun;" (3) knew "he[] [was] a transient;" and (4) saw that, "at some point after they attempt[ed] to arrest him, he fle[d] the scene."  *Id.* The court did not address impoundment.

Mr. Brook entered a conditional guilty plea to being a felon in possession of ammunition.  The firearm charge was dismissed.  The district court sentenced him to 120 months in prison, followed by 36 months of supervised release.  Mr. Brook timely appealed.

5

## II. **DISCUSSION**

Mr. Brook challenges the district court's denial of his motion to suppress the evidence taken from his rented U-Haul pickup truck. Viewing the facts in the light most favorable to the Government and considering the totality of the circumstances, we conclude the officers had probable cause to search Mr. Brook's U-Haul. Under the automobile exception to the Fourth Amendment warrant requirement, we affirm the district court.

### A. *Standard of Review*

"When reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government, accept the district court's findings of fact unless clearly erroneous, and review de novo the ultimate determination of reasonableness under the Fourth Amendment." *United States v. Sadlowski*, 948 F.3d 1200, 1203 (10th Cir. 2020) (emphasis and quotations omitted); *see Ornelas v. United States*, 517 U.S. 690, 699 (1996) ("[D]eterminations of . . . probable cause should be reviewed *de novo* on appeal."). "In doing so, we defer to all reasonable inferences made by law enforcement officers in light of their knowledge and professional experience distinguishing between innocent and suspicious actions." *United States v. Pickel*, 863 F.3d 1240, 1248 (10th Cir. 2017) (brackets and quotations omitted); *see Ornelas*, 517 U.S. at 699 ("[A] reviewing court should take care . . . to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.").

B. *Legal Background*

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. Const. amend. IV. A reasonable search generally requires a warrant based "upon probable cause." *Id.*; *see Chapman v. United States*, 365 U.S. 610, 613 (1961); *United States v. Dalton*, 918 F.3d 1117, 1127 (10th Cir. 2019). Under the automobile exception to "the Fourth Amendment, law enforcement officers may . . . search a vehicle without a warrant if they have probable cause to believe it is carrying contraband or other evidence that is subject to seizure under the law." *Pickel*, 863 F.3d at 1248; *see Carroll v. United States*, 267 U.S. 132, 153 (1925).

"The test for probable cause is not reducible to precise definition or quantification." *Florida v. Harris*, 568 U.S. 237, 243 (2013) (quotations omitted). "Probable cause to search a vehicle exists if, under the totality of the circumstances, a fair probability exists that the vehicle contains contraband or other evidence . . . ." *Pickel*, 863 F.3d at 1248 (quotations omitted). It exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas*, 517 U.S. at 696.

We have upheld a warrantless search of a transient defendant's car after determining officers "had probable cause to believe that . . . [he] was involved in [an] attempt[ed] [burglary]." *United States v. Pollard*, 466 F.2d 1, 4 (10th Cir. 1972). Similarly, we have determined probable cause existed to search a defendant's rental car "[b]ased on the information obtained from [police officers'] surveillance and [a]

7

confidential informant." *United States v. Chatman*, 994 F.2d 1510, 1514 (10th Cir. 1993); *see also United States v. Chavez*, 534 F.3d 1338, 1345 (10th Cir. 2008) (upholding probable cause determination where law enforcement relied on a credible confidential source's information implicating defendant's pickup truck).

## C. *Analysis*

Viewing the evidence in the light most favorable to the Government, we conclude that the officers had probable cause to search the U-Haul. The totality of the circumstances provided "a fair probability . . . that the [U-Haul] contain[ed] contraband or other evidence," *Pickel*, 863 F.3d at 1248 (quotations omitted), in particular some of the guns from the stolen safe.[3]

First, Detective Grimes, Detective Saxon, and Investigator Sharp knew Mr. Brook had taken guns from the stolen safe. Mr. Chambers, Mr. Collins, and Ms. Pelfrey had seen Mr. Brook with at least some of those guns. *See* ROA, Vol. 1 at 59-60. Based on this information, Detective Saxon obtained a warrant for Mr. Brook's arrest. Although eight days passed between the burglary and the U-Haul search, the police had not yet recovered Mr. Brook's stolen guns.

---

[3] In district court, the Government also argued the U-Haul was properly impounded and the inventory search exception to the Fourth Amendment warrant requirement applied. *See* ROA, Vol. 1 at 49-53. On appeal, Mr. Brook argues the inventory search exception does not apply. *See* Aplt. Br. at 11-13. Because the Government no longer relies on the inventory search exception, *see* Aplee. Br. at 14 n.5, we do not consider whether that exception justified the search.

8

Second, Detective Grimes and Investigator Sharp had received information that Mr. Brook had been driving a U-Haul pickup truck and visiting a specific apartment building. *Id.* at 65, 70; *see Chavez*, 534 F.3d at 1345; *Chatman*, 994 F.2d at 1514. Although Mr. Brook was not driving the U-Haul when they saw him arrive at the building, they recognized him as the passenger. *See* ROA, Vol. 1 at 65.

Third, Detective Grimes and Investigator Sharp reasonably suspected Mr. Brook was hiding the guns in the U-Haul because Mr. Collins told Detective Saxon that Mr. Brook was a transient and did not own a vehicle. *Id.* at 60; *see Pollard*, 466 F.2d at 4. Moreover, police officers did not find the stolen guns in the apartment building or on Mr. Brook's person after he was arrested. There was "a fair probability" the stolen guns were hidden in Mr. Brook's rented U-Haul. *Pickel*, 863 F.3d at 1248 (quotations omitted).

Mr. Brook's counterarguments are unavailing. He asserts the officers "never articulate[d] any facts or suspicions [that] the vehicle contained any contraband." Aplt. Br. at 8. Our inquiry, however, is whether "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime w[ould] be found." *Ornelas*, 517 U.S. at 696.

He argues "[t]he information which amounted to probable cause for [his] arrest warrant did not give probable cause to search his vehicle." Aplt. Br. at 8 (citing *United States v. Gaines*, 918 F.3d 793, 800 (10th Cir. 2019) (noting an arrest warrant does not suffice to search the arrested driver's vehicle)). He specifically notes that

9

Mr. Chambers and Mr. Collins "gave conflicting accounts of what happened." *Id.* at 8-9. But despite some differences, their accounts confirmed that Mr. Brook had participated in the burglary and had left Mr. Collins's home with at least three guns from the stolen safe. *See* ROA, Vol. 1 at 59, 61.

Mr. Brook also contends that "[e]ach day that passed after the burglary . . . decreased the likelihood that he still retained possession of the contents of the gun safe." Aplt. Br. at 9. But three witnesses had seen Mr. Brook with stolen guns within at most eight days of Mr. Brook's arrest, and officers had not recovered any of the guns. *See* ROA, Vol. 1 at 59, 61. A reasonable officer could conclude that probable cause had not dissipated. *See United States v. Miles*, 772 F.2d 613, 616 (10th Cir. 1985) (determining probable cause existed where informant saw stolen guns in defendant's possession some time in a two-week period before the search of his home).

Mr. Brook notes that he "did not flee from his vehicle, he fled from the apartment he was visiting." Aplt. Br. at 10. Unlike the district court, we do not regard Mr. Brook's flight from arrest as contributing significantly to probable cause to search the U-Haul. *See United States v. Polly*, 630 F.3d 991, 999 (10th Cir. 2011) (noting flight from police can be considered, among other factors, in probable cause analysis). But his flight at least added to the probable cause factors discussed above, which were sufficient to justify the automobile-exception search of the U-Haul.

10

## III. **CONCLUSION**

We uphold the district court's denial of Mr. Brook's suppression motion and affirm the judgment.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge