FIRST STATE BANK OF DENTON, as Executor of the Will of J.T. Mills, Deceased, Plaintiff–Appellant,

v.

MARYLAND CASUALTY COMPANY, Defendant–Appellee.

No. 90–4089.

United States Court of Appeals, Fifth Circuit.

Nov. 29, 1990.

---

J. Jeffrey Springer, R. William Wood, Hickey & Wood, Denton, Tex., for plaintiff-appellant.

Steven R. Pierret, Janet K. Colaneri, Joseph W. Stewart, Arlington, Tex., for defendant-appellee.

Before POLITZ, WILLIAMS, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The plaintiff, First State Bank of Denton, acting as executor of the will of J.T.

Mills, appeals from a jury verdict finding that a fire at the Millses' home was set intentionally. The plaintiff contends that the district court erred by allowing defendant Maryland Casualty Company (the "insurance company") to introduce a telephone conversation that occurred between a police dispatcher and an unknown male at the Mills' home. In addition, plaintiff argues that the court should have granted its motion for a judgment notwithstanding the verdict (j.n.o.v.) because the insurance company introduced only evidence tending to show that Mills had motive to set the fire, but no evidence that the fire actually was set by or at the instigation of Mills. Finding no reversible error, we affirm.

## I.

The parties agree on the basic facts. The Millses' residence, which was insured by the Maryland Casualty Company, was completely destroyed by fire. Pursuant to Texas law, the policy provided that in case of total loss, Mills would receive $133,000, the entire face amount of the policy. After inspecting the site, however, the insurance company concluded that the fire was set intentionally and thus refused to make any payment on the policy.

The Millses brought suit to recover on their policy, but both of them died before the trial. The First State Bank of Denton continued the claim as executor. At trial, the insurance company introduced evidence showing that the Millses' house was unoccupied for several weeks prior to the fire but that a neighbor had seen a light in the home a few hours before the flames struck. The company also introduced the testimony of a witness who, right before the fire started, saw a pickup truck leaving the road which accesses the residence. Only Mills and his wife had a key to the house, and Mills owned a pickup truck.

The insurance company also showed that Mills was in financial trouble, as he had bought a second home before he had sold his first. For two years, Mills had attempted to sell his first home, but it had enkindled little interest; because of poor market conditions, the value of the home now was

significantly less than the face value of the Millses' policy.

The company concluded by introducing evidence showing that Mills was not at his new home at the time of the fire. About fifteen minutes after the fire began, a police dispatcher attempted to contact Mills at his new residence to notify him of the fire. The dispatcher testified that when she called Mills there, at 1:00 a.m., an unidentified person replied that Mr. Mills was not home. Denton objected, believing this testimony to be unauthenticated and hearsay. The trial court allowed the insurance company to introduce the evidence.

The plaintiff moved for a directed verdict at the close of the company's case and moved for a j.n.o.v. at the trial's conclusion, arguing that this evidence at best showed that Mills only had a motive to combust his home and that this was insufficient to create a jury question. The jury found for the insurance company, and plaintiff now appeals.

## II.

The plaintiff first contends that the phone call the dispatcher made to Mills's house should not have been admitted into evidence, as it was both unauthenticated and hearsay. The district court overruled both objections. The standard of review is whether the court abused its discretion by failing to sustain the objections, and this is evaluated under a federal standard. *Jon–T Chemicals, Inc. v. Freeport Chem. Co.*, 704 F.2d 1412, 1417 (5th Cir.1983).

### A.

Fed.R.Evid. 901 provides that all evidence must be authenticated before being admitted and that this requirement is satisfied by evidence reliable enough to show that it is what its proponent claims it to be. The rule provides a laundry list of examples of proper authentication. Rule 901(b)(6) provides that authentication can occur for a

> [t]elephone conversation[], by evidence that a call was made to the number assigned at the time by the telephone com-

pany to a particular person or business, if (A) in the case of a person, circumstances, including self-identification, show the person answering to be the one called, or (B) in the case of a business, the call was made to a place of business and the conversation related to business reasonably transacted over the telephone.

The illustrations contained in rule 901(b) also provide that they only are examples and do not exhaust all possibilities.

Under the plain language of rule 901(b)(6), when a person places a call to a listed number, and the answering party identifies himself as the expected party, the call is properly authenticated. What is different about the present case is that the person who answered the phone did not identify himself as Mr. Mills; rather, he simply identified the residence as "the Millses' residence." The plaintiff contends that this does not fit within the illustration and that the phone call thus was unauthenticated.

■ What plaintiff ignores is that the illustrations are not exclusive, but are intended only to provide clear examples of properly authenticated evidence. All that is necessary in authenticating a phone call is that the proponent offer "sufficient authentication to make a *prima facie* case that would allow the issue of identity to be decided by the jury." *United States v. Register*, 496 F.2d 1072, 1077 (5th Cir. 1974), *cert. denied*, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 819 (1975).

The plaintiff's position, in demanding that the person answering the phone himself be the defendant, implicitly treats the authentication requirement as requiring an admission by a party opponent. This ignores the true reason for requiring the self-identification: The primary authentication occurs because the phone company usually is accurate. "The calling of a number assigned by the telephone company reasonably supports the assumption that the listing is correct and that the number is the one reached." Rule 901, advisory committee note example (6).

The self-identification supports this maxim by showing that the correct number was dialed. "In such a situation the accuracy of the telephone system, the probable absence of motive to falsify and the lack of opportunity for premeditated fraud all tend to support the conclusion that the self-identification of the speaker is reliable." E. Cleary, *McCormick on Evidence* § 226 at 698 (3d ed. 1984); *accord Register*, 496 F.2d at 1076–77.

■ The evidence in this case meets the *prima facie* standard established in *Register*. The dispatcher who called the Millses' residence on the night of the fire testified that she correctly dialed the Millses' number and that when she asked whether she had reached the Millses' residence, the person replied that "[t]his is the Millses' residence." Furthermore, when she asked whether Mr. Mills was home, the person answered, "J.T. Mills is not at home."

While the evidence does raise potential hearsay problems, it was sufficiently reliable for authentication. There is little doubt that the dispatcher actually reached Mills's home. The trial court thus did not abuse its discretion by overruling the authentication objection.

### B.

■ As for the hearsay objection, the statement "J.T. Mills is not home" is classic hearsay and precisely parallels the example of hearsay given by McCormick. *See* E. Cleary, *supra*, § 248 at 730. The insurance company is trying to prove that Mills was not at home—the truth of the matter asserted—by offering an out-of-court statement. This is forbidden under rule 801.

However, not all hearsay statements are excluded by the rules of evidence. Rule 803(1) provides that "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter," is not excluded by the hearsay rule. Rule 803(24) also provides that statements that are sufficiently trustworthy to mandate reception into evidence also can be accepted by a trial court. The statements in this case fall within both exceptions.

In *United States v. Peacock*, 654 F.2d 339 (5th Cir.1981), a witness testified about comments made by her deceased husband concerning a telephone conversation he had

just finished. We upheld the admission of the evidence under rule 803(1), noting that the " 'substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation.' " *Id.* at 350 (quoting rule 803(1) advisory committee note).

Similar reasoning supports the application of this exception in the instant case. The dispatcher asked the person who answered the telephone to determine whether Mills was there. The respondent left the telephone and did so, and immediately reported that Mills indeed was not at home.

*Peacock* identifies the timeliness of the statement as the key to determining whether the statement meets the present-sense-impression exception to the hearsay rule. *Id.* In this case, the statements were made virtually on the heels of the discovery that Mills was not at home. The conversation satisfied the contemporaneity requirement of *Peacock* and thus properly was received in evidence. *Id.; see* E. Cleary, *supra,* § 298 at 862.

This same reasoning supports reception under the catch-all exception to rule 803. In evaluating the application of rule 803(24), "the length of time between an event and the declarant's statement concerning it is a significant indicator of reliability." *United States v. White,* 611 F.2d 531, 538 (5th Cir.), *cert. denied,* 446 U.S. 992, 100 S.Ct. 2978, 64 L.Ed.2d 849 (1980). In applying this exception, the "duty of the trial judge involves the task of balancing the need for the hearsay against its trustworthiness." *Id.* (citing 4 *Weinstein's Evidence* ¶ 803(24)[01] at 803–290 (1979)).

The core inquiry under the rule "concerns the reliability of the declarant," *id.* at 538 n. 7, which in this case was strong. The person answering the telephone had little motive to lie and was relating information he had just gathered. Under these circumstances, the hearsay evidence properly was admitted, even assuming it did not meet the precise contours of rule 803(1). *See id.* Because the telephone conversation was both properly authenticated and fell within an exception to the hearsay rule, the trial court did not abuse its discretion by allowing its introduction.

### III.

▇ The plaintiff also contends that the district court erred by not granting its motion for j.n.o.v. This decision is governed by federal law, for "[f]ederal courts in this Circuit sitting under diversity jurisdiction do not look to state rules governing the standard of review of jury findings, but rather are bound by the principles established in *Boeing.*" *Maxey v. Freightliner Corp.,* 665 F.2d 1367, 1374 n. 7 (Former 5th Cir.1982) (en banc) (citing *Boeing Co. v. Shipman,* 411 F.2d 365, 368 (5th Cir.1969) (en banc)). Under this standard, a motion for directed verdict or j.n.o.v. should be granted only where the facts and inferences point so strongly in favor of the moving party that a reasonable jury could not arrive at a contrary verdict. *Id.; Boeing,* 411 F.2d at 374–75.

In evaluating the jury's decision, "[t]he verdict of a jury on the facts is presumptively correct but not invulnerable. An evidentiary basis for the verdict is required." *Kincaid v. United States,* 682 F.2d 1220, 1225 (5th Cir.1982). The plaintiff contends that because the insurance company introduced only evidence pertaining to motive, and no evidence that would show that Mills intentionally burned his home, the district court erred as a matter of law in submitting the case to the jury and denying its request for j.n.o.v.

▇ The plaintiff's claim would be persuasive if this were a criminal trial for arson, in which every element of the offense would need to be proven beyond a reasonable doubt. The standard is more lenient in a civil trial, however. While it is true that under Texas law the presumption is against a loss's being caused by the insured's wilful act, *Payne v. Hartford Fire Ins. Co.,* 409 S.W.2d 591, 595 (Tex.Civ. App.—Beaumont 1966, writ ref'd n.r.e.), an insurer is entitled to overcome this presumption by circumstantial evidence. *Id.; accord Bufkin v. Texas Farm Bureau Mut. Ins. Co.,* 658 S.W.2d 317, 320 (Tex. App.—Tyler 1983, no writ).

▇ Under Texas law there is no need, in a civil case, for direct evidence to prove

that a fire was set intentionally. For example, in *Garrett v. Standard Fire Ins. Co.*, 541 S.W.2d 635 (Tex.Civ.App.—Beaumont 1976, writ ref'd n.r.e.), expert testimony showed that plaintiff's business fire had been incendiary in origin. Plaintiff had greatly increased his insurance coverage about a month before the fire and was under a severe financial strain as a result of the closing of his business. *Id.* at 636–37. The court affirmed the holding of the trial court denying him recovery, noting,

> There was no direct eyewitness testimony supporting the jury findings that the appellant caused the fire to start in his building for the purpose of collecting the proceeds of the insurance policy now in suit.... It has long been the law in this state that arson may be established by circumstantial evidence....
>
> The crime of arson, being in defiance of law, is ordinarily conceived in secrecy and executed in such a manner as to avoid detection and exposure, and proof of such an unlawful enterprise must, in the very nature of things, be made by circumstances, and every circumstance which tends to cast light upon the incident is legitimate and proper.

*Id.* at 638. The court evaluated plaintiff's motives and denied him recovery, even though there was no direct evidence showing that he actually had set or commissioned the fire. *Id.* at 638–39.

In evaluating the broad range of evidence that thus can come in, all that is necessary to enable the insurance company to reach the jury is that it show both an incendiary origin for the fire and a reasonable motive of the insured to set a fire. For example, in *Lundy v. Allstate Ins. Co.*, 774 S.W.2d 352, 358 (Tex. App.—Beaumont 1989, no writ), the Lundys, who were behind on their house payments, had moved heirlooms from the home shortly before the fire and had purchased some lantern fuel

that could have been used to start the fire. In addition, they spent a long time getting their dinner at the neighborhood McDonald's and performed several errands on the way back from dinner. When they returned, they found the firefighters busy at their burning home. *Id.* at 354–55. The court held that this evidence, when combined with the incendiary nature of the fire, was sufficient to allow a jury verdict. *Id.* at 359.[1]

■ In the instant case, although there was no direct evidence indicating that the Millses' had set the fire, there was ample evidence that they had financial motivation to commit arson, including evidence that the house had remained unsold for two years, that its value was less than the insured amount, that the Millses' were experiencing financial difficulty, and that the Millses' had a balloon mortgage of close to $100,000 coming due that they could not pay. The evidence also showed that before the fire, Mills had intentionally purchased an old, non-working washer and dryer and a used dinette set that he said he would put in his old house. The insurance company theorized that this was to allow recovery on the contents provisions of the fire policy.

Additionally, the Millses mysteriously showed up at the fire scene later in the night. The inference is that they somehow knew about the fire, possibly from having set it.

Taking all facts and inferences in the light most favorable to the jury verdict, this evidence is sufficient to uphold the jury's verdict, considering that all that is needed is motive and an incendiary origin. Under Texas law, "[i]t is only necessary that [an insurer] prove that the circumstances point to the ultimate fact sought to be established with such a degree of certainty as to make the conclusion reasonably probable." *Bufkin*, 658 S.W.2d at 320.

---

1. *Accord Texas Gen. Indem. Co. v. Speakman,* 736 S.W.2d 874, 881 (Tex. App.—Dallas 1987, no writ) (upholding finding of no arson because insured had no motive); *cf. Joubert v. Travelers Indem. Co.,* 736 F.2d 191, 193 (5th Cir.1984) (construing Louisiana law: "The defendant does not have to prove beyond all reasonable doubt that the claimant was responsible but need only prove that (1) the fire was of an incendiary origin, and (2) the claimant had a motive for arson.").

The insurance company met this threshold here. The trial court therefore did not err in denying j.n.o.v.

The district court acted correctly both in admitting in the contents of the telephone call to the Millses' residence and in denying plaintiff's motion for j.n.o.v. Accordingly, the judgment is AFFIRMED.