**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 27, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

DANIEL LOVATO,

      Defendant - Appellant.

No. 18-1468

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:18-CR-00213-RM-1)**
_____

John C. Arceci, Assistant Federal Public Defender (Shira Kieval, Assistant Federal Public Defender, and Virginia L. Grady, Federal Public Defendant, on the briefs), Office of the Federal Public Defender for the Districts of Colorado and Wyoming, Denver, CO, for the Appellant Daniel Lovato.

Paul Farley, Assistant United States Attorney (Jason R. Dunn, United States Attorney, with him on the brief), Office of the United States Attorney for the District of Colorado, Denver, CO, for the Appellee.
_____

Before **BACHARACH**, **KELLY**, and **CARSON**, Circuit Judges.
_____

**CARSON**, Circuit Judge.
_____

This action arose out of the district court's admission of a 911 call under the present sense impression exception to the rule against hearsay. Defendant Daniel

Lovato ("Defendant") alleges that, in doing so, the district court abused its discretion.[1] Following admission of the 911 call, a jury convicted Defendant of two counts of being a felon in possession of a firearm or ammunition. The district court merged the two counts of conviction, and sentenced Defendant to 100 months' imprisonment followed by three years of supervised release. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm Defendant's conviction.

I.

On March 3, 2018, a man called 911 to report that he witnessed two men in a Honda shoot at another car. The caller followed the Honda and dialed 911 within "two to three minutes" of observing the gunfire.[2] During the approximately thirteen-minute 911 call, the caller discussed the shooting, his continuing observations of the Honda and its occupants, and his safety, often in response to the 911 operator's questions.

The caller began the call by stating that occupants of the Honda "just shot at" another car. After providing his location, phone number, and name to the 911 operator, the caller again described his observations of the shooting less than one minute into the call. Specifically, the caller stated that he observed two Hispanic males in the Honda shoot at a white Durango. Less than three minutes into the call,

___

[1] Defendant presented two collateral issues related to his sentence, both of which the parties now agree that our recent opinions resolve.

[2] In quoting the 911 call, we rely on the audio recording of the call on file. The recording does not differ materially from the written transcript of the 911 call.

2

the caller informed the 911 operator that the shooting occurred "five or six minutes ago."

While the caller continued to follow the Honda, he conveyed additional information of his observations of the Honda. The 911 operator returned the conversation to the shooting about five minutes into the call—seven to eight minutes after the shooting occurred. The caller responded that someone in the Honda fired "two shots," and provided the exact location of the shooting. Just over eight minutes into the call, the 911 operator asked for a description of the suspects, which the caller provided. The caller next stated that the passenger of the Honda was the shooter. Finally, the caller observed the Honda run a red light, at which point he lost sight of the Honda. The caller provided his address to the 911 operator and, with the Honda then out of sight, ended the call after about thirteen minutes.

Shortly thereafter, responding police officer Levi Braun ("Officer Braun") located a Honda matching the caller's description. With Officer Braun in pursuit, the Honda slowed down and Defendant jumped out of the passenger's side of the moving car. Officer Braun stopped to detain Defendant, who volunteered that he had a gun on him. Officer Braun then retrieved a .22 caliber pistol from Defendant's waistband, along with thirty-two rounds of .22 caliber ammunition from Defendant's left front pants pocket. The pistol had a spent shell casing in the chamber, which indicated that someone recently fired the weapon. Officer Braun also located a canister filled with more ammunition in the street near Defendant. Defendant told

3

officers that the driver of the Honda gave him the gun and ammunition, pointed a second gun at him, and threatened to shoot him if he did not jump out of the car.

At the time of this incident, Defendant had prior felony convictions. The government ultimately charged Defendant with three violations of the 18 U.S.C. § 922(g)(1) for being a felon in possession of a firearm or ammunition: one each for possessing the .22 caliber pistol, thirty-two rounds of .22 caliber ammunition, and canister full of additional ammunition.

At trial, Defendant objected to the admission of the 911 call on hearsay grounds. The district court overruled the objection and admitted the 911 call into evidence under the present sense impression exception to the rule against hearsay. The district court concluded "that the length of the call, and the continuous discussion is [not] such that it destroys the contemporaneousness" required to qualify as a present sense impression. The district court based its conclusion on a finding that the call was "essentially, a continuous conversation" about "the same continuing event." The government played the 911 call for the jury.

Although Defendant admitted to possessing the .22 caliber pistol and ammunition, he raised the affirmative defense of duress caused by the driver's threat. Defendant further claimed that the driver was the one who shot at the other car. The 911 call contradicted significant aspects of Defendant's testimony. The jury

4

ultimately convicted Defendant on two counts of violating 18 U.S.C. § 922(g)(1) for possession of the .22 caliber pistol and ammunition in his pants pocket.[3]

After granting Defendant's motion to merge the two counts of conviction, the district court sentenced Defendant to 100 months' imprisonment.[4] The district court also imposed a three-year term of supervised release with special conditions following Defendant's release from prison. Of note, the third special condition of supervised release ("Special Condition Three") requires Defendant to "take all medications that are prescribed by [his] treating psychiatrist" and "cooperate with random blood tests" to demonstrate compliance with the condition. Defendant now appeals.

II.

Defendant contends the district court abused its discretion by admitting the 911 call over his hearsay objection. Specifically, Defendant argues the 911 call does not qualify under the present sense impression exception to the rule against hearsay.

"We review the district court's evidentiary rulings for an abuse of discretion, considering the record as a whole." United States v. Trujillo, 136 F.3d 1388, 1395 (10th Cir. 1998). "Because hearsay determinations are particularly fact and case

---

[3] The jury acquitted on the third count of being a felon in possession of ammunition regarding the ammunition canister.

[4] Over Defendant's objection, the district court found that Defendant had two prior convictions for crimes of violence, and correctly calculated Defendant's guideline sentencing range to be 100 to 125 months based on a total offense level of 24.

5

specific, we afford heightened deference to the district court when evaluating hearsay objections." Id.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." United States v. Collins, 575 F.3d 1069, 1073 (10th Cir. 2009) (quoting Fed. R. Evid. 801(c)). Under Federal Rule of Evidence ("Rule") 802, hearsay is inadmissible, subject to certain exceptions. Fed. R. Evid. 802. A declarant's "present sense impression" qualifies as one such exception. Fed. R. Evid. 803(1).

Under Rule 803(1), "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it" is admissible as an exception to the rule against hearsay, regardless of whether the declarant is available as a witness. Id. "In evidence law, we generally credit the proposition that statements about an event and made *soon after* perceiving that event are especially trustworthy because 'substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation.'" Navarette v. California, 572 U.S. 393, 399–400 (2014) (quoting Fed. R. Evid. 803(1) advisory committee's notes to 1972 proposed rules (emphasis added)). "Unsurprisingly, 911 calls that would otherwise be inadmissible hearsay have often been admitted on those grounds." Id. at 400 (analogizing to the present sense impression exception in a Fourth Amendment case). Defendant argues that: (1) the district court abused its discretion by analyzing the 911 call as a whole and (2) the caller's statements were

6

not sufficiently contemporaneous to qualify as present sense impressions.[5]  We

address Defendant's arguments in turn.

A.

We start by addressing the manner in which the district court considered the

admissibility of the 911 call.  On this issue, we conclude that the district court

properly analyzed the 911 call as a whole because: (1) no authority requires

otherwise in this context, (2) all the statements made within the call pertain to the

same temporal event without a substantial change in circumstances, and (3) other

relevant factors support the reliability of the statements within the call.

No authority creates a blanket requirement that a court must individually

analyze each statement within a broader narrative under the present sense impression

exception.  Indeed, we have affirmed the admission of entire 911 calls as present

sense impressions without requiring such a particularized inquiry.  See United States

v. Allen, 235 F.3d 482, 493 (10th Cir. 2000) (concluding that a 911 tape as a whole

"was admissible as . . . a present sense impression").  Where we—or the Supreme

Court—have not recognized a novel rule or extended a principle to a materially

distinct context, it stands to reason that the district court did not abuse its discretion

in likewise declining to do so.  See Sorbo v. United Parcel Serv., 432 F.3d 1169,

---

[5] Defendant also argues that the 911 call includes speculative statements that are not admissible as present sense impressions.  Defendant imbeds this contention within his argument that the statements lack sufficient contemporaneity because, the argument follows that, speculation demonstrates that the caller had an opportunity for reflection or interpretation.  We will address this argument in like manner.

7

1177 (10th Cir. 2005) (reasoning that a district court does not abuse its discretion when we "know of no authority suggesting that the district court was required" to act in a certain manner). Even though some circumstances may require a court to conduct a more particularized analysis—and we are certainly not saying that the district court would have abused its discretion had it done so here—those circumstances are not present in this case. See Williamson v. United States, 512 U.S. 594, 599 (1994) (conflicting motives for separate statements); United States v. Jackson, 124 F.3d 607, 618 (4th Cir. 1997) (intervening event between statements).

Defendant, however, argues that Williamson requires courts to individually analyze whether each statement within a 911 call is admissible. 512 U.S. at 599. We acknowledge the Supreme Court has opined that the definition of a "statement" under the hearsay rules is limited to "a single declaration or remark" and Rule 803(1) refers to a "statement" that qualifies as present sense impression. Id. (determining in the context of statements against interest that a court must exclude non-self-inculpatory parts of a broader, generally self-inculpatory narrative as inadmissible hearsay). But the principle from Williamson is readily distinguishable because it arises in the context of self-inculpatory statements and is supported by an entirely different rationale than at issue here. See id.

Specifically, the rationale behind separating out non-self-inculpatory statements from self-inculpatory ones is based on credibility concerns due to a declarant's motivation for self-inculpation. See id. at 599–600 (observing that "[o]ne of the most effective ways to lie is to mix falsehood with truth, especially truth that

8

seems particularly persuasive because of its self-inculpatory nature"). Motivation for self-inculpation, however, is not at issue here because the 911 caller in this case was a non-party observer, detached from any allegations of wrongdoing.

In this context, the district court did not need to disassociate each statement within the call to ameliorate credibility concerns. We therefore decline to extend the principle in Williamson to this case because the 911 caller's status as a disinterested observer eliminates the need to assess whether self-serving motives tainted the credibility of individual statements within the 911 call. See id. Thus, we conclude that the district court did not abuse its discretion solely by considering the admissibility of the 911 call as a whole, rather than parsing each individual statement within the call.

Next, no substantial change in circumstances occurred during the call. When a significant, intervening event or substantial change in circumstances occurs between statements, Rule 803(1) may require a court to treat a declarant's statements differently. See Jackson, 124 F.3d at 618 (observing that a witness's statement made after police intervened and gained control of the scene may not qualify as a present sense impression even though earlier statements did qualify). Here, the caller witnessed a shooting, called 911, and followed the Honda during the call with no interruption or police intervention. The caller maintained focus on the Honda and its occupants for the entirety of the discussion. Although the discussion shifts between related topics, the call continually focused on an ongoing stream of observations, which supports the admissibility of the call as a whole. See United States v. Beck,

9

122 F.3d 676, 682 (8th Cir. 1997) (indicating statements made about events that "were part of a single, continuous event" were properly admitted under Rule 803(1)).

Finally, the factors relevant to Rule 803(1)'s trustworthiness rationale applied to the call as a whole. "A 911 call has some features that allow for identifying and tracing callers, and thus provide some safeguards against making false reports with immunity." Navarette, 572 U.S. at 400. Although the use of the 911 system alone "does not 'suggest that tips in 911 calls are *per se* reliable,'" a caller's use of the system mitigates some concern regarding reliability. United States v. Gaines, 918 F.3d 793, 806 (10th Cir. 2019) (Tymkovich, C.J., dissenting) (quoting Navarette, 572 U.S. at 401).[6] Other indicia of reliability are present "when the caller reveals where he is located, jeopardizing his anonymity; does not decline to give any information, especially identifying information; and does not seem in any hurry to make an allegation and hang up." Id. at 806–07 (observing when a caller does not describe activities with precise contemporaneity, it "weakens the reliability" of the call as a whole, but "other indicia of reliability" can make the call "fairly credible" evidence when viewed in full context (id. at 806)).

---

[6] To be clear, a particular credibility judgment of the declarant does not make or prohibit a statement from being present sense impression, but the means through which a declarant speaks can be relevant to the trustworthiness—and, therefore, admissibility—of the statement itself. See Navarette, 572 U.S. at 397 (observing that courts can more often rely on an attributable 911 call than an anonymous tip because the former is more reliable evidence); see also United States v. Parker, 936 F.2d 950, 954 (7th Cir. 1991) (reasoning that the admissibility of statements under Rule 803(1) can be "buttressed by the intrinsic reliability of the statements").

Those same reliability factors apply here. The caller was not anonymous, but rather provided his full name, phone number, and home address during the call. The circumstances of the call, therefore, created a "disincentive for making false allegations," which increases the reliability of its collective statements. See Gaines, 918 F.3d at 806. These factors equally support the truthfulness of each statement within the 911 call, which were all admissible as present sense impressions. See Parker, 936 F.2d at 954. Accordingly, the district court did not abuse its discretion in considering the admissibility of the 911 call as a whole because the entire call was sufficiently reliable.

B.

Next, we must address whether the caller's statements were sufficiently contemporaneous to qualify as present sense impressions. In addressing this question, we must apply the appropriate level of deference to the district court's consideration of case-specific facts. See United States v. Banks, 761 F.3d 1163, 1197 (10th Cir. 2014) (explaining that "we will not disturb the ruling unless it is arbitrary, capricious, whimsical or manifestly unreasonable, or we are convinced that the district court made a clear error of judgment or exceeded the bounds of permissible choice"). Defendant contends that Rule 803(1) requires immediate contemporaneity, and, even if it does not, the passage of time between the 911 caller's observations and statements destroyed the necessary contemporaneity. We reject these arguments. To begin with, Rule 803(1) "recognizes that in many, if not most, instances precise contemporaneity is not possible and hence a slight lapse is

11

allowable." Fed. R. Evid. 803(1) advisory committee's notes to 1972 proposed rules;
see also Christopher B. Mueller & Laird C. Kirkpatrick, 4 Fed. Evid. § 8:67 (4th ed.
June 2019 Update) (commenting that a slight lapse is acceptable under Rule 803(1)
because "a small delay . . . is not enough to allow reflection, which would raise
doubts about trustworthiness").[7] Thus, the advisory committee has specifically
addressed at least half of Defendant's argument and reached a contrary conclusion.

Defendant's position is also belied by the fact that courts addressing the issue
have refused to adopt a "*per se* rule indicating what time interval is too long under
Rule 803(1)." United States v. Hawkins, 59 F.3d 723, 730 (8th Cir. 1995) (quoting
Parker, 936 F.2d at 954), vacated and remanded on other grounds sub. nom., Hawkins
v. United States, 516 U.S. 1168 (1996). And that makes sense because "[t]he
underlying rationale of the present sense impression exception is that substantial
contemporaneity of event and statement minimizes unreliability due to defective
recollection or conscious fabrication." Id. Thus, instead of recognizing a bright-line
rule for specific time intervals and admissibility, courts have held that "the

---

[7] But see United States v. Rosetta, 127 F.3d 1110, at *2 (10th Cir. 1997)
(unpublished table decision) (stating that "a delay of minutes or hours between an
event and a statement bars resort to [Rule] 803(1)" in concluding that a victim's
statement made approximately nine hours after an assault was not admissible under
the present sense impression exception, but was admissible as an excited utterance).
In other words, we suggested that an unspecified period of minutes may be too long
to preserve substantial contemporaneity under Rule 803(1). Id. Our conjecture in
Rosetta is too imprecise to provide significant guidance here beyond the conclusion
that a nine-hour delay between event and statement is too long. Moreover, we
generally disfavor the citation of orders and judgments, so Rosetta is both non-
binding and non-persuasive in this case. See 10th Cir. R. 32.1.

admissibility of statements under hearsay exceptions depends upon the facts of the particular case." United States v. Blakey, 607 F.2d 779, 785 (7th Cir. 1979), overruled on other grounds by United States v. Harty, 930 F.2d 1257, 1263 (7th Cir. 1991). Underlying all of this is the notion that "[t]he need for deference to a trial court ruling on a hearsay objection is particularly great because the determination of whether certain evidence is hearsay rests heavily upon the facts of a particular case." United States v. Rodriguez-Pando, 841 F.2d 1014, 1018 (10th Cir. 1988).

The 911 call in this case involved statements relaying the caller's contemporaneous observations during his pursuit of the Honda, as well as statements describing what the caller observed minutes earlier. Although the call lasted about thirteen minutes in total, the caller first provided details of the shooting only three or four minutes after observing the event. The weight of authority from other jurisdictions counsels in favor of admitting 911 calls such as this one because such a short delay does not give rise to much opportunity for reflection or interpretation that could undermine the reliability of the statements. See, e.g., United States v. Davis, 577 F.3d 660, 669 (6th Cir. 2009) (stating that "it does not matter whether the [911] call was made thirty seconds or five minutes after witnessing the event" because the time interval did not diminish the reliability of the statements); United States v. Shoup, 476 F.3d 38, 42–43 (1st Cir. 2007) (concluding that a district court does not commit obvious error in admitting a 911 call where the caller dials 911 "one or two minutes" after perceiving an event (id. at 40)); Hawkins, 59 F.3d at 730 (affirming the admission of a 911 call placed seven minutes after an event occurred, during

13

which time the caller moved locations due to the event, because the slight delay did not allow significant opportunity for conscious fabrication). To be sure, the caller's statements here are even more contemporaneous with the underlying event (the shooting) than other statements admitted as present sense impressions. See Hawkins, 59 F.3d at 730 (concluding that seven minutes did not destroy sufficient contemporaneity); see also Blakey, 607 F.2d at 785–86 (affirming the admission of statements under Rule 803(1) where the interval was potentially twenty-three minutes between event and statements when "coupled with the substantial circumstantial evidence corroborating the statements' accuracy"). Accordingly, the three to four-minute delay between the shooting and first descriptive statements did not destroy the necessary contemporaneity.

The context surrounding the 911 call in this case also supports the reliability of the statements. Although statements about the shooting and suspects are interspersed throughout the call, the 911 caller made the statements in a discrete period without any break, interruption, or intervening event. See supra Part II(A) (citing Jackson, 124 F.3d at 618; Beck, 122 F.3d at 682). The facts that the 911 call began soon after the caller observed the shooting and focused on "the same continuing event" weighs against the adverse effect of the length of the call on sufficient contemporaneity. See Blakey, 607 F.2d at 786 (affirming the admission of recorded statements even though "[a] relatively large amount of conversation was recorded" because the conversation began "soon after" the underlying event and focused on that central event). The caller's continued focus on the Honda and engagement with the 911 operator further

14

limited his opportunity for "defective recollection or conscious fabrication" while providing detailed statements about the shooting. Hawkins, 59 F.3d at 730.

Defendant also takes issue with the admission of the 911 call because the caller made several statements in response to the 911 operator's questions. Defendant argues that the 911 operator's questions provided an "opportunity for strategic modification," which "undercuts the reliability that spontaneity insures." See United States v. Manfre, 368 F.3d 832, 840 (8th Cir. 2001).[8] The mere fact that the caller made statements in response to questions, however, does not demonstrate that the statements were a product of strategic modification outside the bounds of Rule 803(1). See United States v. Boyce, 742 F.3d 792, 797 (7th Cir. 2014) (observing that a caller "can still make statements without calculated narration even if made in responses to questions"). Indeed, those facts do not materially diminish spontaneity under the circumstances, which supports the rationale for Rule 803(1). See Manfre, 368 F.3d at 840.

Similarly, the caller's movement from the location of the shooting through his pursuit of the Honda does not eliminate sufficient contemporaneity. See United

---

[8] Defendant cites United States v. Green, 556 F.3d 151, 157 (3d Cir. 2009) in support of his argument, but Green is distinguishable. There, law enforcement searched, transported, and formally debriefed a confidential informant before the informant gave a statement fifty minutes after perceiving an event. The court reasoned that these facts "affirmatively indicate[] that [the confidential informant] made his statement after he was expressly asked to reflect upon the events in question, and thereby fatally disqualifies the declaration for admission as a present-sense impression." Id. No such law enforcement intervention or debriefing occurred here, nor is the delay between statement and event near the fifty-minute delay that the speaker experienced in Green. Id.

15

States v. Dean, 823 F.3d 422, 428 (8th Cir. 2016) (concluding that a "911 call and recorded statements occurred with sufficient contemporaneity" where the caller had time to leave an apartment in which an event took place before calling 911 to describe the event); Hawkins, 59 F.3d at 730 (the caller traveled from an apartment to a nearby convenience store before calling 911). The caller made his statements regarding the catalyst of the event (the shooting) within two or three minutes of the shooting, and while observing "the same continuing event" from behind the wheel of his car. See supra Part II(A). Taken together, the facts demonstrate the caller made the statements with no more than the "slight lapse" allowed by Rule 803(1) between event and statement. Fed. R. Evid. 803(1) advisory committee's notes to 1972 proposed rules.

Finally, the call was sufficiently reliable evidence. As discussed above, we look to "other indicia of reliability" outside of the call itself to assess its reliability as evidence. Gaines, 918 F.3d at 806. And "substantial circumstantial evidence corroborating the statements' accuracy" can justify the admittance of a call under Rule 803(1) despite a particularly long delay between event and statement. See Blakey, 607 F.2d at 786 (relying on such evidence to verify reliability where the delay was up to twenty-three minutes); see also Parker, 936 F.2d at 954. After all, "[t]he core inquiry under the rule concerns the reliability of the declarant" under the circumstances. First State Bank of Denton v. Md. Cas. Co., 918 F.2d 38, 42 (5th Cir. 1990) (internal quotation marks and citation omitted).

16

The 911 caller in this case was a disinterested party with no known motive to fabricate information. See id. (affirming the admission of hearsay statements because the declarant "had little motive to lie and was relating information he had just gathered . . . even assuming it did not meet the precise contours of [R]ule 803(1)"). The fact that Officer Braun corroborated several of the caller's statements in short order further adds to the statements' reliability.[9] Even though Officer Braun did not corroborate every detail of the caller's statements—in fact, some peripheral details proved erroneous[10]—Defendant retained the opportunity to attack the reliability of these statements in the presentation of his defense. The fact that the 911 recording system preserved the caller's statements, such that "there is no uncertainty as to the content of the declarant's statement[s]" further supports the reliability rationale for admitting hearsay statements under Rule 803(1). Blakey, 607 F.2d at 785. On balance, we conclude that substantial corroboration of the 911 caller's disinterested statements demonstrates that the statements were particularly reliable evidence. First State Bank of Denton, 918 F.2d at 42.

Accordingly, we hold that the 911 caller's statements qualified as present sense impressions. The "timeline of events suggests that the caller reported the

[9] Specifically, by the time Officer Braun detained Defendant, he corroborated the caller's statements about the Honda's direction of travel, a distinctive feature of the Honda, and Defendant's appearance.

[10] Specifically, the caller said the gun used in the shooting sounded like a 9mm, but Officer Braun discovered a .22 caliber pistol on Defendant's person. The caller also guessed that Defendant was in his twenties, but Defendant was 38 years old at the time of the event.

17

[shooting] soon after" he perceived it and his continuing observations of the Honda and its occupants are the "sort of contemporaneous report [that] has long been treated as especially reliable" in evidence law. Navarette, 572 U.S. at 399. Our conclusion is consistent with the manner in which courts have analyzed sufficient contemporaneity under similar circumstances, and other indicia of reliability bolstered the admissibility of the 911 call in this case. See Gaines, 918 F.3d at 804.

We therefore affirm the district court's decision to admit the 911 call in its entirety under the present sense impression exception to the rule against hearsay.[11]

III.

Defendant contends that his prior conviction for attempted second-degree assault in Colorado is not for a crime of violence. Defendant, however, concedes that circuit precedent precludes both of his assertions on this point. We observe that Defendant maintains the argument strictly for preservation purposes.

Specifically, Defendant concedes that United States v. Mendez, 924 F.3d 1122 (10th Cir. 2019) forecloses his first assertion that Colorado "attempt" is broader than generic "attempt." 924 F.3d at 1126 (observing that a defendant can do "no more than offer theoretical grounds on which some conduct might constitute criminal attempt in Colorado but not under the generic definition of the term"). Defendant further concedes that United States v. Martinez, 602 F.3d 1166 (10th Cir. 2010) forecloses his second assertion that Colorado attempt falls outside the ambit of

---

[11] Because we conclude that the district court did not abuse its discretion in admitting the 911 call, we need not reach the parties' harmless error arguments.

18

Application Note 1 to United States Sentencing Guidelines § 4B1.2(a). 602 F.3d at 1174 (reasoning that attempting to commit a crime of violence is itself a crime of violence). Accordingly, we affirm the district court's sentencing calculation.

IV.

Defendant finally argues that the district court committed plain error in ordering Special Condition Three, without making any particularized supportive findings. Special Condition Three requires Defendant to take all medications that may be prescribed by his psychiatrist, and to demonstrate compliance through random blood tests. In light of our recent decision in United States v. Malone, 937 F.3d 1325, 1329 (10th Cir. 2019), the government submitted a letter pursuant to Federal Rule of Appellate Procedure 28(j) conceding that the district court plainly erred in imposing Special Condition Three. Accordingly, we vacate and remand on this issue for further proceedings.

V.

For the foregoing reasons, we AFFIRM Defendant's conviction, vacate Special Condition Three, and REMAND for further proceedings consistent with this opinion.

*United States v. Daniel Lovato,* No. 18-1468, Bacharach, J., concurring.

I agree with the majority that the district court did not abuse its discretion in admitting the 911 call, that the district court's sentencing calculation was proper, and that we should vacate Special Condition Three. But I respectfully disagree with the majority's conclusions that (1) the court should analyze the 911 call as a whole and (2) we should consider "other indicia of reliability" to determine whether the 911 call is admissible as a present-sense impression under Fed. R. Evid. 803(1). Majority Op. at 17.

**1.    The exception for present-sense impressions applies to individual statements, not conversations.**

Under the Federal Rules of Evidence, a present-sense impression is admissible as an exception to the rule against hearsay. Fed. R. Evid. 803. A present-sense impression is "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). A "statement" is in turn defined as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a).

Under this definition, a 911 call may contain multiple statements. Some statements may qualify as present-sense impressions, and others may not. But to apply these definitions, courts must separately analyze the individual statements.

The Supreme Court required consideration of each individual statement in *Williamson v. United States*, 512 U.S. 594 (1994). There the Court wrestled with the hearsay exception for statements against interest. *See* Fed. R. Evid. 804(b)(3). That exception, like the one for present-sense impressions, applies only to a "statement." *Id.* So the Court focused on the rules' definition of the term "statement," holding that it refers to "a single declaration or remark" rather than "a report or narrative." *Williamson*, 512 U.S. at 599 (quoting *Webster's Third New International Dictionary* 2229 (1961)). The Supreme Court then considered the principle behind the statement-against-interest exception, explaining that "reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true." *Id.* That principle does not necessarily apply to every statement in a confession. The Supreme Court thus held that the statement-against-interest exception requires courts to separately analyze each statement to determine whether it is self-inculpatory. *Id.* at 599–604.

*Williamson*'s reasoning likewise applies to the hearsay exception for present-sense impressions. Just as a confession may contain statements that are self-inculpatory and statements that are not, so too a 911 call may contain statements that are present-sense impressions and statements that are not.

The majority downplays *Williamson*, reasoning that the Supreme Court was considering the hearsay exception for statements against interest, not present-sense impressions. But the Supreme Court was applying a definition of "statement" that applies equally to both exceptions.

The Sixth Circuit has thus observed that "it would make little sense" to confine *Williamson* to the hearsay exception for statements against interest. *United States v. Canan*, 48 F.3d 954, 960 (6th Cir. 1995). For this observation, the court reasoned that the Supreme Court was relying on a definition of "statement" that governed all of the hearsay exceptions in Rule 804:

> Although *Williamson* defined the term "statement" as it applies in the context of Rule 804(b)(3) "statements against interest," we think that its definition extends to the other hearsay exceptions delineated in Rule 804 as well. Accordingly, the term "statement" must mean "a single declaration or remark" for purposes of all of the hearsay rules. This determination is consistent with the idea implicit in Rule 801(a): that there is an overarching and uniform definition of "statement" applicable under all of the hearsay rules. Rule 801(a) indicates that its definition of statement covers Article VIII (Hearsay) of the Federal Rules of Evidence, entirely. It would make little sense for the same defined term to have disparate meanings throughout the various subdivisions of the hearsay rules.

*Id.* This reasoning applies here, compelling us to use *Williamson*'s definition of a "statement" when considering present-sense impressions.

Other courts have also applied the exception for present-sense impressions to each individual statement rather than collectively to an

3

entire conversation or narrative. For example, the Second Circuit parsed individual statements in a 911 call:

> We conclude that the 911 tape, or at least the portion in which the caller states that the light-skinned black men in front of the bar are shooting-the crucial issue in [the petitioner's] trial-was not shown by the People to be a report of a present sense impression and thus did not fall within the exception for that class of hearsay.

*Brown v. Keane*, 355 F.3d 82, 89 (2d Cir. 2004). So too did a Maryland appellate court:

> The second [911] call . . . consisted of nine statements by the declarant. The first was legitimately a Present Sense Impression. The other eight were not. . . . The remaining eight statements consisted largely of a question and answer exchange between the declarant and the officer taking the call, as the declarant narrated past events in order to bring the officer up to date. "There was a shooting." "They're looking for a gun." "[I]t was two guys. They threw it, more like buried it[.]" None of these is remotely a Present Sense Impression. . . . [The calls at issue] illustrate . . . how easy it is for a seemingly simple declaration to wander randomly back and forth between present impression and past narration.

*Morten v. State*, 215 A.3d 846, 858 (Md. Ct. Spec. App. 2019).

Until now, our court has never held that a district court can apply a hearsay exception to an entire conversation. The majority points to *United States v. Allen*, where we concluded that the tape of a 911 call was admissible as a present-sense impression. 235 F.3d 482, 493 (10th Cir. 2000). As the majority points out, the *Allen* panel didn't separately discuss the individual statements. But the defendant had not challenged the admission of specific statements. The defendant instead argued that the

4

entire call was inadmissible because it was cumulative and the declarant was biased. *See United States v. Allen*, No. 99-3236, Appellant's Opening Br. at 32–33. We thus had no occasion to separately analyze specific statements made during the 911 call. And a precedent like *Allen* cannot be interpreted to include holdings on issues that were neither raised nor decided. *E.g.*, *MODOC Lassen Indian Hous. Auth. v. U.S. Dep't of Hous. & Urban Dev.*, 881 F.3d 1181, 1191 (10th Cir. 2017). The majority's approach is thus unsupported by precedent.

This approach appears difficult to apply. Under the majority's approach, it is unclear when a district court should analyze an entire 911 call as a single statement or separately analyze each individual statement. I fear that district courts will now struggle with how to apply the straightforward definition of "statement" set forth in the Federal Rules of Evidence.

Rather than foist this struggle onto district courts, I would consider each challenged statement in the 911 call to determine whether the district court erred in finding a present-sense impression.

## 2. A separate reliability inquiry is not required.

The majority discusses the caller's reliability, considering factors not directly related to contemporaneousness. For example, the majority notes that the caller was not anonymous and that "the circumstances of the call . . . created a 'disincentive for making false allegations.'" Majority Op. at

5

11 (quoting *United States v. Gaines*, 918 F.3d 793, 806 (10th Cir. 2019) (Tymkovich, C.J., dissenting)); *see also* Majority Op. at 9 (noting "the 911 caller's status as a disinterested observer").

In my view, however, the exception for present-sense impressions contains no separate requirement of reliability. The hearsay exceptions themselves are designed to assure reliability. *See* Fed. R. Evid. 803 advisory committee's note to 1972 proposed rules ("The present rule proceeds upon the theory that under appropriate circumstances a hearsay statement may possess circumstantial guarantees of trustworthiness sufficient to justify nonproduction of the declarant in person at the trial even though he may be available."). For example, the exception for present-sense impressions requires temporal proximity, which itself serves as a proxy for reliability. *See United States v. Green*, 556 F.3d 151, 155–56 (3d Cir. 2009) (observing that contemporaneousness "is the effective proxy for the reliability of the substance of the declaration" under the exception for present-sense impressions); *see also United States v. Ruiz*, 249 F.3d 643, 647 (7th Cir. 2001) ("[C]ourts sometimes focus on the corroboration or the lack thereof in admitting or excluding present sense impressions, but the truth is that the rule does not condition admissibility on the availability of corroboration." (citation omitted)). So I respectfully disagree with the majority's view that a caller's reliability bears on

6

admissibility under the exception for present-sense impressions.[1] *See* Edward J. Imwinkelried, *The Need to Resurrect the Present Sense Impression Hearsay Exception: A Relapse in Hearsay Policy*, 52 How. L.J. 319, 350 (2009) (explaining that unlike some state statutes, the federal present-sense exception "does not purport to grant the judge discretionary authority to exclude otherwise admissible statements when 'circumstances indicate lack of trustworthiness'").

### 3. The district court did not abuse its discretion in admitting the statements in the 911 call as present-sense impressions.

Though I respectfully disagree with the majority's approach, I agree with its outcome because the district court reasonably treated the challenged statements as sufficiently contemporaneous to constitute present-sense impressions.

As the majority explains, we review the district court's decision under the abuse-of-discretion standard. This standard is ordinarily deferential, *Marczak v. Greene*, 971 F.2d 510, 516 (10th Cir. 1992), and we

---

[1] Some of the majority's authorities do not involve the exception for a present-sense impression, and I would not apply these authorities. *See, e.g.*, *United States v. Gaines*, 918 F.3d 793, 806 (10th Cir. 2019) (Tymkovich, C.J., dissenting) (invoking the reliability of an anonymous tip as grounds for concluding that an investigative stop was supported by the reasonable suspicion required by the Fourth Amendment); *First State Bank of Denton v. Maryland Cas. Co.,* 918 F.2d 38, 42 (5th Cir. 1990) (discussing "the catch-all exception to rule 803," Fed. R. Evid. 803(24), and stating that "the core inquiry" under this exception "concerns the reliability of the declarant" (quoting *United States v. White*, 611 F.2d 531, 538 n.7 (5th Cir. 1980))).

7

review with "heightened" deference here because of "the fact-specific nature of a hearsay inquiry." *United States v. Pursley*, 577 F.3d 1204, 1220 (10th Cir. 2009) (citing *United States v. Trujillo*, 136 F.3d 1388 (10th Cir. 1998)). Discretion means that the district court has a "range of choice, and . . . its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Betty K Agencies, Ltd. v. M/V Monada*, 432 F.3d 1333, 1337 (11th Cir. 2005) (quoting *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1324 (11th Cir. 2005)). So when we review a district court's ruling under the abuse-of-discretion standard, we are ultimately deciding whether the district court has made a reasonable choice among the alternative outcomes. *Gasperini v. Center for Humanities, Inc.*, 149 F.3d 137, 141 (2d Cir. 1998).

We elsewhere apply the abuse-of-discretion standard by recognizing the permissibility of various outcomes. For example, when confronted with challenges to the substantive reasonableness of a sentence, we've often recognized that many sentences are typically reasonable. *See, e.g.*, *Gall v. United States*, 522 U.S. 38, 51 (2007). We thus find an abuse of discretion only when the district court chooses a sentence outside the range of reasonable sentences. *E.g.*, *United States v. DeRusse*, 859 F.3d 1232, 1236 (10th Cir. 2017).

8

So it is here when we review the admission of present-sense impressions. In this area, the test lacks bright-line distinctions. *See United States v. Green*, 556 F.3d 151, 156 (3d Cir. 2009) ("[C]ourts have not adopted any bright-line rule as to when a lapse of time becomes too lengthy to preclude Rule 803(1)'s application."); *see also United States v. Blakey*, 607 F.2d 779, 785 (7th Cir. 1979) ("There is no Per se rule indicating what time interval is too long under Rule 803(1)."), *overruled on other grounds by United States v. Harty*, 930 F.2d 1257, 1263 (7th Cir. 1991). Some statements are so obviously contemporaneous that no one would question whether they constitute present-sense impressions. For example, consider a 911 call in which a witness reports a robbery in progress. This report would obviously be considered contemporaneous. On the other hand, some statements are so clearly separated in time from the incident that no one would regard the statements as present-sense impressions. For example, a 911 call detailing the events of a robbery a week earlier would obviously not qualify as contemporaneous.

Between these polar extremes is a large gray area: statements in 911 calls that could reasonably be regarded as either contemporaneous or non-contemporaneous. For these statements, district courts have broad discretion in determining admissibility. *See Balentine v. State*, 707 P.2d 922, 926 (Alaska Ct. App. 1985) (observing that the Alaska version of the

9

rule for present-sense impressions "leaves much room for subjective application").

All of the challenged statements fall within this gray area, where district courts enjoy considerable discretion. Some of the disputed statements reported ongoing observations, some recalled events that had occurred several minutes earlier, and some answered specific questions from the 911 operator. For each statement, the district court could reasonably conclude that the caller was

- describing or explaining an event

- while or immediately after the caller saw the event

- sufficiently close in time to the event to qualify as a present-sense impression.

*See* Majority Op. at 11. Given the reasonableness of these conclusions, I would hold that the district court did not abuse its discretion in treating each challenged statement as a present-sense impression.

10